May it please the court, this case is about an innocent man that was sentenced to 60 years in prison due to the constitutionally ineffective representation of his trial counsel. His trial counsel was grossly inefficient because he failed to even interview two eyewitnesses that knew the assailants and would have testified that Blackmon was not one of them. Not to mention failing to interview seven additional alibi witnesses that would have testified that Blackmon was with them at a barbecue when the murder took place. Now eyewitness identification and alibis are two of the most pivotal issues in criminal defense. Both are present here and neither was properly tried. But before we get into that I'd like to address some procedural issues that were raised in regards to the hair salon claims, witness claims. Now to be clear there are no procedural issues related to the alibi witnesses. Now first the state argues that Blackmon waived his claims regarding the based on the record of this case. And second the court asked whether the hair salon employees are procedurally defaulted. The state court found the claim was not properly raised in state court. However any procedural default in state court should be excused under schlup because a failure to consider this evidence would result in a miscarriage of justice by keeping an innocent man in prison. Now the district court used the wrong standard when addressing these issues. You asked if the district court should use 2254 to consider actual innocence. The answer is no it should have used the schlup standard. This has been admitted by respondents in pages 28 through 29 of their brief and as such we ask that this court reverse the district court finding because it includes a clear error of law. Well that was a mistake but that doesn't necessarily make it reversible. If the claim was indeed either waived because it was not included in the habeas petition and or procedurally defaulted because it wasn't included in the state proceedings as a Strickland claim then there are still procedural problems even though the district court analyzed them erroneously. Well it's our position your honor that Mr. Blackman has actually gone through the gateway of schlup and shown that he didn't characterize the hair salon witness claims as a Strickland claim either in the state court or in his habeas petition in federal court. He didn't say in other words that counsel's failure to discover these two witnesses which were unknown apparently or maybe one of them was unknown and the other was apparently known to the police but there was no police report about it I think if I understand the record completely but in any event he never presented that claim as a Strickland ineffective assistance of counsel claim to the state court or in his petition. He presented it as a freestanding state law actual innocence claim in state court and as you pointed out a gateway to get the procedural default excused in this court but that leaves the procedural default in state court intact as far as I can tell because it wasn't presented that way. Respectfully we disagree your honor. Blackman raised a due process claim under the 14th amendment based on actual innocence due to newly discovered evidence. Now pleadings by pro se petitioners should be liberally construed and the Sixth Amendment's guarantee to ineffective assistance of counsel has been incorporated into the states by the due process clause. Okay that's that's the waiver or the anti-waiver argument for the habeas petition but we still have the the default in state court he didn't bring this claim in his initial post brought it in an application to file a successive in state court but only as a actual innocence freestanding state law claim not as a Strickland claim at least as I understand the state courts decision. Is there something that undercuts that? Well it's our schlup is precisely addresses this sort of case where for some reason the petitioner defaulted in state court because they didn't follow some sort of state court rule and it allows this court to bypass that any procedural default and consider the evidence if he shows that he is actually innocent and in this case we contend that he has shown that he's presented a number alibi I'm sorry he's presented the affidavits from numerous eyewitnesses that were at the scene and saw the assailants they knew them they recognized them and said that that petitioner was not one of them. Well the two hair salon witnesses were apparently offering their testimony in his favor eight years after the fact and from a disadvantaged viewpoint in terms of where they were vis-a-vis the state's witnesses who were actually in their cars on the street and saw everything that happened. Well respectfully your honor we disagreed that they were in a disadvantaged position they may have been crouching down behind chairs but they had a view of the assailants through a large plate glass window and keys that they recognize the assailants unlike the hair or unlike the car drivers who had never seen the assailants before. This court has recognized that identification of strangers is unreliable and in this case because the hair salon witnesses recognize the assailants their the hair salon was located right next door to where the murder took place they they were one of two shops on the block there was a large plate glass window and we contend that the eyewitnesses in the hair salon were as close to the murder scene as the two car drivers. However their testimonies I noted was more reliable they knew that they knew the assailants it just does not their testimony is an entirely different bucket than the hair I'm sorry like then the car drivers. Was there any investigation of Arrigo? Your honor yes they talked with Arrigo after to some extent after the murder. Well that wasn't an investigation. The police? Yes no but to investigate him as implicating him in the murder no your honor. I think he I think he was responsible for it. Well your honor it still does not implicate mr. Black. I'm just very surprised that there was no serious investigation of Arrigo. I agree your honor and there are other things that don't make sense in this case for instance there's evidence that the police got the wrong man. There early in the investigation there was evidence that came up that two other individuals were responsible for the murder. That would be an Eric Pride Bridges and a Michael Kino Davis yet the police didn't apparently investigate those two suspects instead they placed Eric 40 black men's photograph in the photo array. So the evidence shows not only does he have testimony showing that showing his innocence from the alibi witnesses and the hair salon employees but it looks like the police simply got the wrong man. And your your honors I see that my I'm into my rebuttal time I'm happy to answer any additional questions but I would like to reserve some time for rebuttal. If I could just ask quickly on the the barbecue alibi witnesses do you agree that the treatment of that by the state courts is required to be given deference under a depot. Yes your honor. And then on the hair salon witnesses if I recall correctly it took Mr. Blackman Mr. Blackman's investigator a year and a half to find them. Is that right? He said that as part of his federal petition. Okay they were able to be found. They they were working right next door to the scene of the murder and I believe one of them had moved on since then but he was still able to find them and secure their testimony which is what his trial counsel should have done. Given the difficulty the investigator had I guess I'm troubled by the idea that trial counsel didn't have a year and a half to find them. How would that be ineffective? Well your honor the situation was different at that point. The two hair salon witnesses were employees of the hair salon. They worked at the hair salon and had Blackman's trial counsel simply walked gone to the crime scene and talked with people at this hair salon he would have found them. They were still employed. When did they leave the hair salon? I don't know your honor. Okay well thank you. Thank you. Mr. Schleppenbach. May it please the court. Counsel. Assistant Attorney General John Schleppenbach on behalf of the respondent warden. Your honors this court should affirm. There's a very substantial probability that this was not the murderer. Your honor respectfully we disagree with that. Well in light of the two consistent credible independent eyewitnesses who both viewed. Credible? Yes highly credible your honor. These witnesses had no reason to invent their story. They had no relation to anyone involved in the case whatsoever. They were just ordinary citizens who happened to be driving by when they witnessed a horrific killing. That doesn't mean that their identification is reliable. What makes the identification reliable is the fact that the state court said the procedures were quote almost pristine. These witnesses were kept separate. They never met. They never talked to each other. They gave yet very consistent accounts with one another of how things occurred on that street that day and they both consistently identified the petitioner. First in pristine photo arrays then in pristine lineups and then at the trial. So their consistency is a hallmark of their credibility as is their independence. These witnesses were strong witnesses. They had no reason to invent this. French and Reese one of the eyewitnesses stopped her car and tried to help the victim. She stopped at the scene tried to do what she could. She called 9 1 1. Richard Arrigo told her not to do that because he already had it covered. That turned out to be false and she this is a very credible eyewitness someone who really wanted to do her best to make an appropriate identification and but get the right guy. I assume you're familiar with all the with with some at least of the skeptical literature about identification. And of course the problem in a case like this is these people are going to be very excited and nervous. Well certainly your honor. This is to murder and that's not a that's not a good situation in which to be. I mean I'm sure they're you know acting in good faith and so on. But but it's very easy for them to pick on you know the first person they see. But that's not what happened in this case. Indeed the witnesses saw one thing for certain that one of the witnesses saw more than one photo array. And then the first array declined to make an identification. Saw people who were not petitioner. Petitioner was not in that array. And she said well these people sort of resemble him but I'm not making an identification because I'm not able to make a full identification. It wasn't until she. Of course we now have we now have we now have evidence from other people who who identified someone else. Well one of the Harris. What is especially reliable about these people and not about the. You know he has a bunch of affidavits from other people. Well only one of the affidavits actually identifies another proposed shooter in this case. Or I guess two because Richard Arrigo. I'm sorry no just one. It is one of the Harris salon witnesses who was able to say it was a gentleman that she knew by the name P who was the shooter. The other salon witness said it wasn't petitioner who he didn't know. But it wasn't petitioner. He didn't make another identification of someone else. Is P the same person as Pride? It's not clear from the record. It does not appear so based on her affidavit alone. But it's I can't. Do we know what his real name is? I'd have to look at the affidavit again Your Honor. I'm not certain. I don't believe that his real name. I think she said just the street name. Because there were other suspects being developed. Well yes and we know that the nickname for Michael Davis was Kino I believe. And there was another one named who's nicknamed Pride. There's not a P that I'm aware of who entered in the case. Well Kino and Pride were the alternative second shooters? There were there was talk about them. There's some evidence of this in the record. Who's the first shooter? I'm sorry the second shooter was petitioner. The first shooter was one of those individuals potentially. The record is of course the record for this case. So it's not developed as to other potential suspects. It's the record that was brought out. Were the eyewitnesses shown a picture of Bridges? I don't believe they were shown a picture of Bridges. They were shown a employee's interview given their proximity to them. Those witnesses were not interviewed because they were not apparent from the record. The police. Not apparent on the record. They weren't apparent from the police reports. What does apparent mean? Well they weren't revealed. Their names were not in there. Their contact information. But didn't the police realize? Don't the police question everybody in the immediate vicinity? Yes your honor and they did. So why didn't they question the people in the hair salon? They did. They went to the hair salon as part of the canvas. You can see that in the police reports. And they spoke to a witness there who said he was in the bathroom at the time of the shooting and he didn't see or hear anything. That was the information that was available to counsel. That the police had already checked out the hair salon. Well that doesn't check it out if they just talked to one person. Well it appears from the record that there was one person there. And they spoke to that person and he said he didn't see or hear anything. So you're saying there was only one person in the hair salon. I think that's a reasonable inference from the record. It's not entirely clear but I think if the police went to the trouble of going to the hair salon canvassing the neighborhood to see witnesses and they interviewed one person it's hard to imagine that they would have turned around and walked out ignoring three other people who were waiting to talk to them. One of the hair salon witnesses admits that she never talked to the police. Never made any effort to talk to the police. The other witness says. Yeah so? Well so she what she doesn't claim that she was available to the police as part of the canvas. She doesn't claim that she was available to the petitioner's counsel at the time. Yes I know but suppose but suppose her you know later statements about what she saw. Suppose that's convincing. It is not your honor. And I do. Why not? Well I need to take issue with some of the representations that were made by opposing counsel in that regard. These witnesses as your honor noted were ducking crawling on the floor. One of them said she was hiding behind her salon chair at the time she claims to have observed the shooting. And there was not a large plate glass window in that shop. There is no evidence of that in the record and although it is not of record Google Earth shows two small windows at that address with blinds on them. What shows the small windows? Google Earth if you google the address a picture of it comes up and it shows two small witnesses two small windows. Again it's not of record neither is there contention that they are plate glass. Well given to correct the misrepresentation that was made about the plate glass window. There is no place like plate glass window your honor. Just to be clear on that. So the witnesses were crouching ducking trying to look through two small windows to a shooting that occurred not in front of their shop but in front of the restaurant to the south of their shop. Why wasn't Arrigo prosecuted? Your honor this record in this case does not reveal that. I know that Arrigo is deceased. Pardon? I know from I don't want to go outside the record. Well you just did so you might as well continue. Thank you. And we sometimes do. We know. I do. Google which is a great source. Google it comes up with an obituary for Richard Arrigo from Chicago. So what is Arrigo's? You say he was dead? Arrigo seems to be dead based on. It seems to be. He's just moving slightly. That is that is the credence I give to Google but that is the best information we have on this point your honor I'm afraid. As to Arrigo's role it seems clear that he was involved in setting up the murder. I mean he he placed a call to the petition to the victim which he later denied doing. Left a voicemail which the police played for him in which he said hurry up and get to this place where you were going to be shot. He then after the shooting called the gangster who is reputed to have set up this killing shown by his call logs and then he tried to prevent French and Reese from calling 9-1-1 basically did a lot of things that suggests that he did have some involvement in setting up this murder. For that reason I think the contention that his affidavit somehow provides evidence of actual innocence is is ludicrous and the idea that counsel was ineffective for after interviewing him not calling him is just wrong. That that testimony could have seriously hurt petitioner's case not helped it. Counsel can I take you to another issue please? Sure. Which you asserted in your brief that petitioner Blackman was part of the same gang that Cox the victim was. Yes. I found a citation to a police officer's grand jury testimony to that effect. Yes. Do you have anything better? That is all we have your honor. That is the only evidence of record in this case. It wasn't part of the trial record? No. No. And do we have any business relying on it? I don't think you need to rely on it. I think that it wasn't relied on at trial clearly it was not we the state's theory was not that this was. So we should just erase that sentence from the brief? Well I think that sentence is relevant to the extent this court is looking for looking for looking behind the scenes. A police officer's grand jury testimony that was never tested about street reputations? I don't think so. What was the state's theory of motive then? Well the state's so the state's really didn't present motive evidence at trial. The state sort of presented the eyewitness testimony that this was what the shooting occurred and that this was the person who did it. Gang evidence is very much disfavored in Illinois so there certainly was not presentation of gang evidence. And I see my time has expired. What about the seven affidavits? Yes of those seven affidavits your honor six of them do not actually provide a true alibi because what they say is I was at a barbecue the petitioner was there too for a period of many hours and I did not see him leave. Now that doesn't exclude the possibility of him having left at a point when he was not observed and indeed the barbecue was only a mile from the crime scene. So that's a five minute drive to commit the shooting and return very easy to get there and back and not be detected. As to the seven? You think he drove from the barbecue murdered the victim and went back to the barbecue? I think it's very possible your honor it would not be the strangest thing we've As the seventh witness in the affidavit she was petitioner's ex-girlfriend and the mother of his child therefore obviously susceptible to some allegations about credibility. Moreover the claim to have continuously watched someone for a period of several hours is as the trial court expressly found somewhat ridiculous that people don't watch people for that long unless they're paid to do so. So unless there are further questions. Do we know the identity of shooter number one? No. There is some evidence in the record that could suggest various individuals some of whom we've already discussed. It does not on this record we can't say if anyone was ever prosecuted for being shooter number one. Well we know if someone was or wasn't prosecuted right? That's not from this record I guess I would say. Isn't the combination we know that eyewitness testimony is frequently highly unreliable. Isn't the combination of two eyewitnesses who are the whole case. No motive and Arrigo. See this is very troublesome. If as appears Arrigo arranged the murder there ought to be some connection between him and Blackmon. Well and it appears the connection is that Arrigo was willing to lie about who he saw shoot in order to exonerate Petitioner. But there's no phone call evidence or anything like that? There are no calls between Arrigo and Petitioner. No. But there there are phone calls between Arrigo and these other two alternative suspects. Well no there are calls between Arrigo and the gangster who is reputed to have ordered that. Obviously Arrigo is not going to identify the murderer since that would lead directly back to Arrigo. Right. Right. Yes. So what we have is a likely murderer or arranger of the murder Arrigo. And we and and the police completely flop dealing with Arrigo. And then you have two eyewitnesses in a very you know nerve-wracking situation. And I don't know it's seems very questionable. Very questionable. Your Honor I understand the concern. Thin bad police investigation. Well anyway. Not your fault. Thank you very much. Thank you. Um Ms. Riddell? Your Honor as was noted there was no motive or no physical evidence linking Blackmun to the crime. Mr. Schleppenbach said that which was contrary to my recollection but interesting what you said that um the two eyewitnesses who identified Blackmun they were really solid. Everything they said you know sensible and they saw everything and tried to help the victim and so on. Now is that an accurate depiction of that eyewitness testimony? We disagree Your Honor. The two eyewitnesses there were a lot of strange things related to them. For instance uh Ms. Reese she identified two individuals from the original photo array that she said resembled the assailants. One being Blackmun. Later on when she identified Blackmun it looked nothing like him. Um I assume she was impeached on that at trial. Uh yes I believe her attorney I'm sorry Mr. Blackmun's attorney tried to impeach him during trial but it it does go to the question on that these were not pristine witnesses Your Honor and there's no evidence to show how Mr. Blackmun's photograph even got in the photo array. I'd like to direct this court to pages uh 506 in the appendix and also um pages uh 174. It shows that the only thing directing them was some testimony by an officer saying that he heard from victim's family members that uh Blackmun was involved. But if you go into the if you go into the investigation report the only evidence there from from the victim's family members were that they identified Kino and and Bridges. Eric Bridges um nicknamed Pride. Now why wasn't Arrigo charged? Why wasn't why wasn't Pride charged? Why wasn't Kino charged? Everything here in this case suggests that the police investigation was sloppy that they got the wrong man and now an innocent man is sitting in prison for 60 years for something he didn't do. Okay well thank you Ms. Riddell and you were appointed were you not? I was thank you. Thank you for your efforts on behalf of your client.